**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CHAMBERS OF
**MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.  ROOM 2042
NEWARK, NJ 07102
973-645-3827

Not for Publication

**LETTER OPINION AND ORDER**

January 15, 2010

**VIA CM/ECF**
All counsel of record

    Re:    **Robotic Parking Systems, Inc., et al. v. City of Hoboken, et al.**
            **Civil Action No. 06-3419 (SRC)(MAS)**

Dear Counsel:

This matter comes before the Court by way of Intervenors Unitronics, Inc. and Unitronics (1989) (R"G) Ltd.'s ("Intervenors" or "Unitronics") motion for a protective order. (Docket Entry ("DE") ## 132-36.) Plaintiffs Robotic Parking Systems, Inc. and Robotic Service Organization, LLC ("Plaintiffs" or "Robotic") opposed Intervenors' request. (DE # 139.) Defendants City of Hoboken, David Roberts and John Corea ("Defendants") filed a position letter. (DE # 140.) The undersigned heard oral argument on January 4, 2010. Based on the below discussion, Intervenors' motion for a protective order is granted in part and denied without prejudice in part.[1]

**I.    SUMMARY OF FACTS**

All parties to this matter are well-versed in the surrounding facts. Accordingly, this Opinion and Order will only address those facts relevant to the instant motion. Unitronics asserts that Robotic's expert should not be able to have access to data stored on the City of Hoboken's ("City")

---

[1] During oral argument, this Court also addressed other discovery-related disputes, which shall be addressed in this Opinion and Order.

servers or computers, because the software that runs the garage has Unitronics's trade secrets and Robotic is a direct competitor. (Unitronics's Moving Br. ("Moving Br.") 1.) First, Unitronics contends that Robotic has failed to provide the Court with any evidence that it has copyrighted materials or that copyrighted materials are or were on any of the computers at the garage when Unitronics was first given access to same. (*Id.* at 9.) If there were no copyrighted materials, then Unitronics asserts that access and disclosure to the servers and computers is unwarranted, because it could not have copied any protected materials. (*Id.* at 1.)

Next, Unitronics argues that Robotic has failed to provide any evidence that disclosure of Unitronics's software is necessary for this action that would support risking the loss or impairment of Unitronics's trade secrets. (*Id.* at 5, 9.) In fact, the City cannot grant access to Robotic's expert because the City entered into a contract with Unitronics prohibiting same. (*Id.* at 1.) Also, Unitronics has certified that it had not encountered any source codes on the computers and research of the U.S. Copyright Office indicates that Robotic has not copyrighted any software-related systems, which means that disclosure is not necessary for the instant matter. (*Id.* at 2-3, 9.)

Finally, Unitronics contends that its software is a trade secret and disclosure will result in irreparable harm because it will give Robotic an unfair competitive advantage. (*Id.* at 5.) While Unitronics is reasonably confident that it has removed all source codes from the computer in the garage, other trade secrets may remain exposed to damaging disclosure. (*Id.* at 6.) Review of the computer by a non-independent expert may reveal extensive information about the Unitronics trade secret protected system, which could find its way to Unitronics's competitors. (*Id.*) For instance, disclosure may reveal the following types of trade secrets: architecture of the system; look and feel of screens and user interface, which would allow competitors to find new ideas for future versions; PLCs and control software stored on PLCs, which could provide competitors with development shortcuts by

inspiring different techniques; and information about "pitfalls or problems" with the Unitronics system that is not public information and that could be used by competitors for marketing purposes to the detriment of Unitronics. (*Id.* at 6-7; Decl. of Eyal Saban ("Saban Decl.") ¶ 5.) According to Unitronics, there is evidence to support the assertion that Robotic is seeking access to the computers for the purpose of acquiring trade secrets and gaining a competitive advantage. (*Id.* at 3, 8.) Specifically, Unitronics alleges that the son of the founder of Robotic illegally attempted to gain access to the server room after Unitronics's system had been installed. (*Id.*)

Finally, Unitronics requests that if disclosure is required the Court appoint an independent expert, require Robotic give same expert the copyrighted source code and have the expert report back to the Court as to whether any of the copyrighted source code is on the Unitronics computer. (*Id.* at 9-10.) Unitronics is willing to advance the costs of the Court's expert, subject to recouping same from Robotic when the expert finds that no copyrighted materials owned by Robotic are on the computer. (*Id.* at 10.) If, on the other hand, the Court finds that Robotic made an adequate showing of relevance, the Court should issue a protective order to secure the confidentiality of Unitronics's trade secrets. (*Id.*)

Robotic disagrees with Unitronics's assertions, noting that Robotic previously was granted permission to examine the computers in the garage by way of orders entered on November 16, 2006, May 27, 2008 and June 29, 2009, as well as subsequent telephone conferences. (Pl.'s Opp'n Br. 2-4.) According to Robotic, when Robotic appeared at the garage with its expert to inspect the computer that operates the garage, Defendants informed Robotic that it would be instead producing three computers (the "black server," "white server" and Compaq workstation), which had formerly operated the garage. (*Id.* at 6.) Upon inspection of the "forensic images" that Robotic's expert took of the two servers and workstation, it was discovered that proprietary Robotic files had been accessed and possibly copied off the servers. (Pl.'s Opp'n Br. 6-7; Decl. of Grennier ("Grennier Decl.") ¶¶ 4-8.) It was further

3

discovered that: (i) software had been installed on the black server computer; (ii) Robotic's electronic data map was accessed and moved, which indicates that it was possibly used elsewhere or reversed engineered; and (iii) the white server and Compaq workstation were accessed by a flash drive, but the expert was unable to tell whether anything was copied without having reviewed the flash drive. (Pl.'s Opp'n Br. 8-9; Grennier Decl. ¶¶ 9-11.) To get a better understanding as to whether proprietary information is being improperly used on the operating computers, the expert must have access to same. (Pl.'s Opp'n Br. 8-9; Grennier Decl. ¶ 12.)

Robotic reminds this Court that the Vice-President and Chief Technical Officer of Unitronics, Eyal Saban, admitted in his declaration that the computer that operates the garage contains software that is intermingled with that of Unitronics and Robotic. (*Id.* at 9; Decl. of Eyal Saban ("Saban Decl.") at ¶ 13.) Mr. Saban further admitted that the Unitronics computers do not contain source codes and that customers have full access to the screens and user interfaces. (Pl.'s Opp'n Br. at 9.) Accordingly, Robotic asserts that access must be permitted, because:

1. Whether Robotic's software is still on the operating system and is being used by Defendants is relevant to Plaintiffs' breach of contract claims;

2. Defendants' use and copying of files that were created from Robotic's source code is relevant to whether Defendants have infringed Robotic's copyrights; and

3. Any proprietary information on Unitronics's computer can be protected via a confidentiality order. As for Unitronics's concerns pertaining to the PLCs and architecture of the garage, the concerns are gratuitous because Robotic's expert would not be inspecting either one. (*Id.* at 11.)

As for the Defendants, based on Unitronics's motion, Defendants believe that a stay of the inspection is appropriate. (Def.'s Position Br. 1.) Defendants contend that Robotic's main assertion is that Robotic should be permitted to inspect Unitronics's operating computers because the computers may contain information tending to prove that Robotic's source codes continue to be used at the garage. (*Id.*) According to Defendants, Robotic's assertion admits that the information

4

is not within the Defendants' control, and as such, it is clear that Robotic has no good faith basis to continue its claim against the Defendants. (*Id.*) Robotic's expert describes ambiguities within the mirror images, but cannot describe specific computer activity that would tend to demonstrate that Robotic's source codes were copied from its computers. (*Id.* at 2.) Thus, the inspection should be stayed and Defendants and Unitronics should be provided with an opportunity to properly inspect the mirror images that Robotic has provided. (*Id.*) This will provide Defendants and Unitronics with the ability to provide a substantive opposition to Plaintiffs' inspection request. (*Id.*)

## II. LEGAL STANDARD & ANALYSIS

### A. Motion for a Protective Order

Under Federal Rule of Civil Procedure 26(b), upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. *Id.* As this Court has recognized, Rule 26 is to be construed liberally and relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Evans v. Employee Benefit Plan*, No. 03-4915, 2006 WL 1644818, at *4 (D.N.J. June 6, 2006); *Nestle Food Corp. v. Aetna Cas. & Surety Co.*, 135 F.R.D. 101, 103 (D.N.J. 1990). Relevant information need not be admissible at trial, however, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000); *see also Nestle*, *supra,* 135 F.R.D. at 104. As stated in *Hickman v. Taylor*, 329 U.S. 495 (1947), "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Id.* at 507.

When the burden of a discovery request is likely to outweigh the benefits, Federal Rule of Civil Procedure 26(b)(2)(C) vests the District Court with the authority to limit a party's pursuit of

otherwise discoverable information. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Accordingly, a discovery request may be denied if this Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the discovery after assessing the following factors: (i) the unreasonably cumulative or duplicative effect of the discovery; (ii) whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery;" and (iii) "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). The purpose of this rule of proportionality is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Bowers v. Nat'l Collegiate Athletic Assoc.*, No. 97-2600, 2008 LEXIS 14944, at *14 (D.N.J. Feb. 27, 2008) (quoting *Leksi, Inc. v. Fed. Ins. Co.,* 129 F.R.D. 99, 105 (D.N.J. 1989)). Thus, while discovery and relevance may be broad, it is not boundless.

Another method that this Court may undertake in order to limit the scope of discovery is to issue a protective order pursuant to Federal Rule of Civil Procedure 26(c). Upon a finding of good cause, this Court may issue a protective order pursuant to Rule 26(c) "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . [an order] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." The party requesting entry of such an order must demonstrate that the information sought includes trade secrets, that disclosure might be harmful and that there is a "particular need for protection." *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786-87 (3d Cir. 1994). Good cause is established by demonstration that disclosure will work a clearly defined and serious injury to the party seeking a protective order. *Id.* The injury

must be substantiated by specific examples and reasons, as broad allegations of harm do not support a showing of good cause.  *Id.*

Upon demonstration that good cause exists, this Court must undertake a balancing test between the requesting party's need for the information against the injury that may result if uncontrolled disclosure is granted.  *See id.*  If the Court finds that the information should be disclosed, the issue then becomes whether it should be disclosed in a designated way or whether any limitations of disclosure should be ordered.  *Id.*  Factors to consider include: (i) whether the information is being sought for a legitimate purpose or for an improper purpose; (ii) whether disclosure will promote fairness and efficiency among litigants; and (iii) whether a party benefitting from the order is a public entity, public official or private litigant and whether the case involves matters of little or substantial legitimate public interest.  *Id.* at 786-88 (remanding to assess whether the circumstances justify a confidentiality order prohibiting the disclosure of a settlement agreement to a newspaper company); *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986), *cert. denied*, 486 U.S. 976 (1987).  Importantly, the party asserting that discovery should be prohibited bears the burden of establishing the lack of relevancy or undue burden.  *Gutierrez v. Johnson & Johnson*, No. 01-5302, 2002 U.S. Dist. LEXIS 15418, at **8, 10 (D.N.J.  Aug. 12, 2002).

Here, in order to consider whether issuance of a protective order is appropriate, this Court must consider whether the information Unitronics seeks to protect should be treated as a trade secret or confidential information.  A trade secret has been defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  *Rohm & Haas Co. v. Adco*

7

*Chem. Co.*, 689 F.2d 424, 431 (3d Cir. 1982) (quoting Restatement of Torts § 757 cmt. b (1939)).

The Third Circuit considers the following factors when making such an analysis:

1. The extent to which the information is known outside of the owner's business;
2. Extent it is known by employees and others involved in the business;
3. Extent of measure taken by owner to guard the secrecy of the information;
4. Value of the information to the owner and its competitors;
5. Amount of effort and/or money expended by owner in developing the information; and
6. Ease or difficulty by which the information could be properly acquired or duplicated by others.

*Smith v. BIC Corp.*, 869 F.2d 194, 200 (3d Cir. 1989) (quoting *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1233 (3d Cir. 1985) (granting a protective order in a products liability case for information concerning confidential design, safety and quality test information, but denying an order with regard to information concerning other accidents or complaints)).

In the instant matter, this Court finds that good cause exists to enter a protective order that requires the parties to enter into a confidentiality order, because Robotic may gain access to Unitronics's trade secrets. *See Pansy*, *supra*, 23 F.3d at 786-87. This Court finds that a confidentiality order will properly protect Unitronics from any harm that may result, despite assertions that Robotic has acted inappropriately in the past. Thus, Unitronics has failed to meet its burden to demonstrate that total non-disclosure is warranted.

First, this Court finds that disclosure is justified, as limited by the confidentiality order, because in order to successfully litigate its claim of breach of the licensing agreement and non-disclosure and non-compete agreement, Robotic must demonstrate that its software and/or garage system remains in the operating computers currently at the garage and that same is being improperly used by Defendants and Unitronics. (Pl.'s Opp'n Br. 11.) Defendants' use and copying of files that were created from Robotic's software and/or garage system is also relevant to whether Defendants have infringed Robotic's copyrights. (*Id.*) Clearly, the aforementioned issues and the possibility that Defendants will

discover relevant evidence go straight to the heart of this litigation and Robotic's claims. Therefore, this Court finds that the information is being sought for a legitimate purpose. Unitronics has not shown that the information that may be obtained is irrelevant or that it will cause Unitronics undue burden. Also, Unitronics has asserted that it is reasonably confident that it has removed all source codes from the computers in the garage. (Moving Br. 6.) Similarly, Plaintiffs have asserted that they will not access the PLCs in Unitronics's computer or the architecture of the garage. (Pl.'s Opp'n Br. 11.) Thus, Unitronics's concern that Plaintiffs will have access to the architecture of the garage system, the screens and user interface and the control software, which may result in a competitive advantage, are too remote and too speculative to warrant total non-disclosure. (*See* Moving Br. 6-7.) While there is a concern that other trade secrets may remain exposed to damaging disclosure, this Court is convinced that a confidentiality order will protect same.

Secondly, Unitronics asserts that Robotic has failed to provide evidence that copyrighted materials are or were in any of the computers at the garage when Unitronics was first given access to same, and as such, Unitronics could not have copied or used Robotic's information, software or system. (*Id.* at 1, 5, 9; Intervenors' Reply Br. ("Reply Br.") 8.) However, this Court finds that even if Robotic does not have registered copyrighted materials, access to the computers may nonetheless result in disclosure of other relevant information that may be admissible for purposes of Robotic's breach of contract claim. Moreover, pre-trial discovery is quite broad and shall only be limited upon a showing that the burden outweighs any benefit to the requesting party or upon a showing of good cause that total non-disclosure via a protective order is necessary. Fed. R. Civ. P. 26(b)(2)(C); *See Tele-Radio Sys. Ltd., supra,* 92 F.R.D. at 375; *Bayer AG, supra,* 173 F.3d at 191. Here, no such showing was made to warrant total non-disclosure.

Next, this Court finds that Unitronics's request for a Court-appointed, independent expert is unnecessary and would be judicially inefficient. Robotic has a right to choose its own expert and requiring a neutral expert to inspect the computers before permitting Robotic's expert access to same will only result in additional and duplicative costs and evidence. Indeed, according to Robotic, upon inspection of the "black server," "white server" and Compaq workstation, it was discovered that proprietary Robotic files had been accessed and possibly copied off the servers. (Pl.'s Opp'n Br. 6-7.) Specifically, it was discovered that (i) software had been installed on the black server computer; (ii) Robotic's electronic data map was accessed and moved, which indicates that it was possibly used elsewhere or reversed engineered; and (iii) the white server and Compaq workstation were accessed by a flash drive. (*Id.* at 8-9.) To get a better understanding as to whether proprietary information is being improperly used on the operating computers, the expert must have access to same. It makes judicial and economic sense to permit the same expert, or another expert that already understands Robotic's system and software, to inspect the computers.

As for the Defendants' request to stay the inspection pending Defendants' and Unitronics's review of the "mirror images," this Court will not entertain such a request. (Def.'s Position Br. 1.) This matter is a 2006 case that must move forward. The issues have already been briefed and this Court does not see the benefit in staying this decision pending additional discovery or review of the mirror images.

### B.   Attorney Fees & Expenses

In its reply brief, Unitronics requests that this Court award attorney fees and expenses pursuant to Federal Rules of Civil Procedure 26(c)(3) and 37(a)(5). (Reply Br. 1-2.) Under Federal Rule of Civil Procedure 26(c)(3), which pertains to protective orders, whether an award of expenses should be granted is controlled by Rule 37(a)(5). Rule 37(a)(5)(A) provides that if a motion to compel disclosure or discovery is granted, "the court must, after giving an opportunity to be heard, require the party or

deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id.*; *see Huertas v. City of Camden*, No. 06-4676, 2008 U.S. Dist. LEXIS 90219, **12-13 (D.N.J. Nov. 6, 2008). This subsection is not applicable to Unitronics. Here, Rule 37(a)(5)(C) is more applicable. When a motion is granted in part and denied in part, "the court may issue any protective order authorized under Rule 26(c) and *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." *Id.* (emphasis added); *see Hadley v. Pfizer, Inc.*, No. 08-1440, 2009 U.S. Dist. LEXIS 47363, *12 (E.D. Pa. June 4, 2009) (denying party's request for sanctions and attorney's fees because "several of Plaintiff's defenses were meritorious, and Defendant did not succeed on each of its discovery claims."). Here, the Court declines granting any party attorney's fees or expenses. This Court finds that Robotic was justified in requesting access to the computers and Unitronics and Defendants were justified in opposing same. *See* Fed. R. Civ. P. 37(a)(5)(A). Thus, Unitronics's request for attorney's fees and expenses is denied.

  **C.** **Adoptive Admissions**

In its reply brief, Unitronics also requested that this Court treat all facts and assertions in the moving brief that were not specifically refuted by Robotic as "adoptive admissions" pursuant to Federal Rule of Evidence 801(d)(2)(B). (Reply Br. 2-6.) Unitronics's request is misguided. Rule 801pertains to hearsay exceptions and provides as follows: "A statement is not hearsay – . . . (2) The statement is offered against a party and is . . . (B) a statement of which the party has manifested an adoption or belief in its truth." Fed. R. Evid. 801(d)(2)(B). First, the parties are reminded that we are still in the early stages of pre-trial discovery, and as such, issues of the admissibility of evidence, admissions and hearsay will be properly discussed and raised during the final pretrial conference and at trial, should the parties be unable to amicably settle this matter. Nonetheless, this Court will address the issue to avoid any and all uncertainty by the parties.

11

To find that silence is an adoptive admission, this Court must consider "(1) whether the statement was such that, under the circumstances, an innocent person would deny the statements and (2) whether there are sufficient foundational facts from which the jury may infer that the defendant heard, understood, and acquiesced in the statement." *U.S. v. Lafferty*, 503 F.3d 293, 306 (3d Cir. 2007). When silence is relied upon for the assertion that statements were adopted and acquiesced to, the person requesting a finding of adoptive admissions must demonstrate that, under the circumstances, a person would ordinarily protest or object to such statements if they were untrue. *See id.* (citing to Fed. R. Evid. 801 advisory comm. notes).

Here, simply because Robotic failed to refute each and every factual assertion in Unitronics's brief does not mean that it was an adoptive admission or that Robotic "has manifested an adoption or belief in its truth." *See* Fed. R. Evid. 801(d)(2)(B). In fact, during oral argument on January 4, 2010, Robotic's counsel explained that the evidence regarding any alleged misconduct by the son of the founder of Robotic was very speculative and irrelevant to Robotic's request for access to the computers that operate the garage. This Court agrees. Moreover, any assertions or allegations that Unitronics's system and software is superior to that of Robotic is not relevant to this motion, insofar as this Court finds that a protective order will protect any of Unitronics's trade secrets. As such, Robotic's silence does not indicate an adoptive admission.

Under the circumstances, it was not essential for Robotic to respond to each and every factual assertion or allegation in Unitronics's moving brief or complaint, as a response was not needed in order to oppose the instant motion. *See Lafferty, supra,* 503 F.3d at 306. Thus, to now find that Robotic's silence as to certain factual statements are "adoptive admissions" would be an unfair and inequitable outcome. Based on the aforementioned reasons and for good cause shown, this Court denies Unitronics's request to treat Robotic's silence on certain factual assertions and allegations in Unitronics's moving brief as adoptive admissions.

**D.    Mirror/Forensic Images**

During oral argument and by letters dated November 30, 2009 and December 22, 2009, Defendants asked this Court to require that Robotic produce to Defendants, at Robotic's sole cost, the forensic software necessary to see and review the "mirror images" of the Robotic servers and workstation. (DE # 144 ("Nov. 30th Letter"); DE # 146 ("Dec. 22nd Letter.")  Defendants assert that Plaintiffs' refusal is a violation of Federal Rule of Evidence 37(a)(4), because without the software, which may cost over $20,000, Defendants cannot review same. (Nov. 30th Letter 2; Dec. 22nd Letter 1.)  Moreover, according to Defendants, Plaintiffs should not be permitted to depose the City's information technology person about the information contained in the mirror images without providing Defendants complete access to same. (Dec. 22nd Letter 1.)  Defendants request that this Court enter an Order compelling Plaintiffs to provide the necessary software to read the mirror images by a certain date. (*Id.* at 1-2.)

Plaintiffs respond that they were not ordered to provide the software and Defendants should be required to purchase the software themselves.  (DE # 143 ("Nov. 23rd Letter") 2-3; DE # 145 ("Dec. 1st Letter") 1.)  Robotic's expert, Michael Grennier of TIG, confirmed that the exact "forensic images" that Robotic created from the hard drives of the three computers were provided to the Defendants as required.  (Nov. 23rd Letter 2.)  The forensic images are similar to a ".zip" file, a compressed version of the hard drives, which an expert can then use to recreate same.  (*Id.*)  According to Robotic, Defendants are seeking Robotic's expert to "blow-back" the images to an operational computer drive, which was not required.  (*Id.*)  During oral argument, Robotic's counsel explained that any forensic expert should have the necessary software, and as such, Robotic's should not be required to endure the costs associated with Defendants' purchase of same.

Since Robotic has provided the forensic images to Defendants, the only issue this Court must address is the costs associated with the software necessary to view the forensic images.  As

previously discussed, discovery at the pre-trial stage is very broad and shall be liberally construed absent a good cause showing that any burden is outweighed by the benefits. Fed. R. Civ. P. 26(b); *Tele-Radio Sys. Ltd., supra,* 92 F.R.D. at 375; *Bayer A.G., supra,* 173 F.3d at 191. Here, this Court finds that the software must be produced to Defendants and, extending the underlying principles of Federal Rule of Civil Procedure 37(a)(5), this Court believes that an award of reasonable expenses associated with the purchase of the software is both proper and justified. Again, this Court finds that Robotic was substantially justified in refusing to provide the software, as Robotic believed it was only required to produce the forensic images and that Defendants' forensic expert would have the capability of blowing-back the images without having to purchase the software. (*See generally* Nov. 23rd Letter; Dec. 1st Letter; Jan. 4, 2010 Oral Argument Tr.) Nevertheless, Defendants have requested the software on numerous occasions and must have a reasonable opportunity to review the images if its witnesses will be deposed about same.

      While the requesting party would generally bear the burden of discovery expenses, here, this Court finds that there is good cause to require the parties to share in the costs associated with purchasing the necessary forensic software. First, Robotic is the party that seeks to use the forensic images to depose witnesses and potentially for trial. Second, the Court ordered Robotic to produce the mirror images to Defendants and, without the software, the Defendants are unable to see the exact, mirror images that Robotic's expert have reviewed and analyzed. Finally, pursuant to Local Civil Rule 26.1(d), prior to the initial scheduling conference, the parties should have attempted to amicably agree upon which party would "bear the costs of preservation, production, and restoration (if necessary) of any digital discovery," including computer-based information. *Id.* at R. 26(1)(d)(3)(b). It appears that they failed or were unable to reach such an agreement, resulting in a need for this Court to intervene. Thus, based on the foregoing facts, this Court finds that a splitting of the costs is appropriate.

However, as a second option, this Court will also permit the parties to meet with Robotic's expert on a mutually-agreed upon date. During same date, Robotic's expert shall make available for Defendants' review a computer with the "blow-back" images of the forensic images previously provided to Defendants. Robotic, counsel and/or its expert need not remain in the room while Defendants inspect same and Robotic, Defendants and/or their counsel should refrain from questioning one another's expert or IT person on same date. Should the parties decide to proceed in this manner, each party will bear their own costs associated with the hiring of an expert and attorney fees. Otherwise, if the parties are unable to come to an agreement with regard to the aforementioned, this Court finds that it is just and appropriate to require the parties to split equally the purchase price for the software and user agreement necessary to view the forensic images provided by Robotic. Each party will then bear their own costs associated with the hiring of any expert and attorney fees.

### E. Depositions of Fact Witnesses

Finally, both parties have been attempting to schedule and conduct the depositions of several fact witnesses. Specifically, Plaintiffs seek to depose Patrick Riccardi, John Corea, David Roberts and Nitin Patel. (Nov. 23rd Letter 1; Dec. 1st Letter 1.) Defendants seek to depose Gerhard Haag. (Nov. 30th Letter 2-3; Dec. 22nd Letter 2.) The facts surrounding the parties' inability to schedule the aforementioned depositions need not be discussed. The parties are not disputing the relevancy of the depositions. Notably, fact discovery closed on 12/31/09. However, because this Court was aware of the potential depositions prior to the close of fact discovery, the depositions will be permitted.

During oral argument on January 4, 2010, this Court instructed all parties that the depositions of the aforementioned deponents must be completed by January 29, 2010. However, in order to provide all parties with a reasonable amount of time to complete the depositions, this Court will extend the date to February 22, 2010. If, upon review of the blow-back images and after the

depositions have been taken, the parties believe that certain deponents need to be re-deposed for the limited purposes of discussing the forensic, blow-back images, the parties shall make a written request for the Court's consideration. Otherwise, apart from the aforementioned depositions, no additional fact discovery shall be permitted.

### III.   CONCLUSION

For the foregoing reasons and for good cause shown, it is on this **15th** day of **January, 2010,** **ORDERED THAT:**

1. Intervenor Unitronics's motion for a protective order is granted in part and denied without prejudice in part.

2. By **1/29/10**, the parties shall file with this Court a confidentiality order that includes provisions whereby Robotic agrees, at a minimum, to the following:

    a. Any information retrieved by Robotic shall be used only for purposes of this litigation and shall be limited to information relevant to the instant matter;

    b. Robotic shall not use any information obtained from inspection of the computers at the garage or take pictures of same for future use outside the scope of this litigation and/or in order to gain a competitive advantage. This shall include, but not be limited to, Robotic agreeing not to use any information for the following purposes:

        i. Understanding and/or reverse engineering the architecture of the Unitronics software or garage system;

        ii. Acquiring a competitive advantage by review of the Unitronics screens and user interface;

        iii. Reviewing and copying the PLCs and control software stored on PLCs in order to gain development shortcuts;

    iv. To acquire information concerning any "pitfalls" or problems associated with the Unitronics system that is not public information; and

    v. Taking photographs of the computers or Unitronics's software, system and/or user interface unless it can reasonably be said to be relevant to or connected to Robotic's software or system and/or Robotic's breach of contract claims.

 The aforementioned provisions may be added to the confidentiality order previously discussed and agreed upon between all parties or may be filed as a separate, new confidentiality order.

3. By **2/1/10**, Defendants and/or Unitronics shall provide Robotic's expert with access to the computers operating the garage.

4. Intervenor Unitronics's motion for attorney fees and costs associated with its motion for a protective order is denied without prejudice.

5. On a mutually-agreed upon date, but no later than **2/1/10**, Robotic and its expert shall make available for Defendants' review a computer with the "blow-back" images of the forensic images previously provided to Defendants. Robotic, counsel and/or its expert need not remain in the room while Defendants inspect same. Robotic, Defendants and/or their counsel are prohibited from questioning one another's expert or IT person on same date. Each party shall bear their own costs associated with the hiring of an expert and attorney fees. If, however, the parties are unable to come to an agreement with regard to the aforementioned, the parties shall split equally the purchase price for the software and user agreement necessary to view the forensic images provided by Robotic. Each party shall bear their own costs associated with the hiring of any expert and attorney fees.

6. By **2/22/10**, the depositions of Patrick Riccardi, John Corea, David Roberts, Nitin Patel and Gerhard Haag shall be completed.

7. Absent special permission from this Court, no additional fact discovery will be permitted.

8. **FAILURE TO ABIDE BY THIS ORDER MAY RESULT IN SANCTIONS.**

    s/ Michael A. Shipp
**HONORABLE MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**